UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NANCY MARIE HOLZWORTH,                    Case No. 12-12635

            Plaintiff,                    Bernard A. Friedman
v.                                        United States District Judge

COMMISSIONER OF SOCIAL SECURITY,          Michael Hluchaniuk
                                          United States Magistrate Judge

            Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 8, 11)**

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On June 16, 2012, plaintiff Nancy Marie Holzworth, filed the instant suit

seeking judicial review of the Commissioner's unfavorable decision disallowing

benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule

72.1(b)(3), District Judge Bernard A. Friedman referred this matter to the

undersigned for the purpose of reviewing the Commissioner's decision denying

plaintiff's claim for a period of disability and disability insurance benefits.  (Dkt.

2).  This matter is before the Court on cross-motions for summary judgment.  (Dkt.

8, 11).

**B.    Administrative Proceedings**

Plaintiff filed the instant claims on January 7, 2009, alleging that she became disabled on October 4, 2008.  (Dkt. 6-5, Pg ID 133-34).  The claim was initially disapproved by the Commissioner on May 1, 2009.  (Dkt. 6-3, Pg ID 67).  Plaintiff requested a hearing and on August 10, 2010, plaintiff appeared with an attorney before Administrative Law Judge ("ALJ") Troy M. Patterson, who considered the case de novo.  (Dkt. 6-2, Pg ID 52-65).  In a decision dated November 23, 2010, the ALJ found that plaintiff was not disabled.  (Dkt. 6-2, Pg ID 36-48).  Plaintiff requested a review of this decision on December 2, 2010.  (Dkt. 6-2, Pg ID 33-34). The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on June 5, 2012, denied plaintiff's request for review.  (Dkt. 6-2, Pg ID 25-27); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    FACTUAL BACKGROUND

**A.    ALJ Findings**

Plaintiff was born in 1958 and was 50 years of age on the alleged disability

onset date and 51 years old at the time of the administrative hearing.  (Dkt. 6-2, Pg

ID 47).  Plaintiff's past relevant work included work as a teacher's aide.  (*Id.*).  The

ALJ applied the five-step disability analysis to plaintiff's claim and found at step

one that plaintiff had not engaged in substantial gainful activity since the alleged

onset date.  (Dkt. 6-2, Pg ID 41).  At step two, the ALJ found that plaintiff's

depression, anxiety and mood disorder were "severe" within the meaning of the

second sequential step.  (*Id.*).  At step three, the ALJ found no evidence that

plaintiff's combination of impairments met or equaled one of the listings in the

regulations.  (Dkt. 6-2, Pg ID 41-43).

        The ALJ concluded that plaintiff had the following residual functional

capacity:

> to perform a full range of work at all exertional levels but
> with the following nonexertional limitations: she would
> be limited to jobs involving only superficial interpersonal
> contact with co-workers and the public, and she cannot
> do production rate pace work.

(Dkt. 6-2, Pg ID 43-46).  At step four, the ALJ found that plaintiff could not

perform her past relevant work.  (Dkt. 6-2, Pg ID 46-47).  At step five, the ALJ

denied plaintiff benefits because she could perform a significant number of jobs

available in the national economy.  (Dkt. 6-2, Pg ID 47-48).

### B.     Plaintiff's Claims of Error

        Plaintiff presents one issue to the Court:  "Whether the Commissioner erred

as a matter of law by failing to properly evaluate the 'severe' impairment of depression."  According to plaintiff, the ALJ did not evaluate the degree of functional limitations in the four broad functional areas identified in 20 C.F.R. § 404.1520a(c)(3): activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  Plaintiff also asserts that she was found to have a Global Assessment of Functioning ("GAF")[1] score of 20 on her hospitalization on October 27, 2009, and a score of 40 on her discharge. Plaintiff states that a GAF score of 50 indicates "serious symptoms OR any serious impairment in social, occupational or school functioning."

Finally, plaintiff asserts that the ALJ asked the vocational expert two hypothetical questions.  According to plaintiff, the ALJ first asked the vocational expert to assume a person who could function at all exertional levels, but would be limited to jobs involving only superficial contact with the public, and the vocational expert testified that there were several jobs in that could be performed, including office positions, inspector positions, and farming labor type positions. The ALJ then added a second hypothetical–to assume that the individual has marked restrictions of no useful vocational functioning, maintaining attention and concentration, relating adequately to supervisors and co-workers, tolerating stress

---

[1]  "GAF examinations measure psychological, social and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations."  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009).

and responding adequately to routine changes in a work setting–and the vocational

expert testified that such a person could not perform any jobs.  Plaintiff contends

that the ALJ improperly relied on the VE's testimony in response to the first

hypothetical question instead of the second, because the first question did not

encompass all of plaintiff's impairments.  Plaintiff requests an award of benefits, or

in the alternative, a remand of this case for a full hearing based on all the facts.

### C.      Commissioner's Motion for Summary Judgment

The Commissioner argues that although plaintiff's arguments are difficult to

decipher and largely unsupported, plaintiff seems to argue, incorrectly, that the

ALJ did not perform the "special technique" to analyze whether she had an

impairment that met or equaled a Listing.  According to the Commissioner, the

ALJ reasonably determined that plaintiff's mental impairments did not meet or

medically equal the criteria of a Listing for an affective disorder (Listing 12.04) or

anxiety-related disorder (Listing 12.05).  Contrary to plaintiff's claim, the ALJ

performed the "special technique" and properly considered whether plaintiff had

limitations in the four broad functional categories identified in 20 C.F.R.

§ 404.1520(a)(c)(3).  The ALJ properly found that plaintiff had mild restrictions in

her activities of daily living; moderate difficulties in social functioning and in

maintaining concentration, persistence, or pace; and no episodes of

decompensation.  (Dkt. 6-2, Pg ID 41-43).  Thus, because plaintiff's mental

impairments did not cause at least two "marked" limitations, or one "marked" limitation and "repeated" episodes of decompensation, the ALJ properly found that plaintiff's mental impairments did not satisfy a Listing.  (*Id.*).  Thus, the Commissioner contends, plaintiff's first argument lacks merit.

The Commissioner further argues that the ALJ's residual functional capacity determination is supported by substantial evidence.  According to the Commissioner, the ALJ acknowledged that plaintiff had severe mental impairments that affected her functioning, and he therefore imposed a series of restrictions on the kind of work plaintiff could perform that accommodated her symptoms and limitations.  Specifically, recognizing that plaintiff had difficulty sustaining concentration and interacting with others, the ALJ restricted plaintiff to jobs involving only superficial interpersonal contact with co-workers and the public, and no "production rate pace work."  (Dkt. 6-2, Pg ID 43-46).  The ALJ reasonably gave weight to the opinion of Wayne Hill, Ph.D., a state agency psychologist who reviewed plaintiff's medical records in May 2009 and assessed her ability to perform mental tasks.  Dr. Hill found that plaintiff had mild to moderate limitations in understanding and memory; moderate limitations in sustained concentration and persistence; mild limitations in her ability to interact; and moderate limitations in her ability to adapt.  (Dkt. 6-7, Pg ID 243).  Despite these restrictions, Dr. Hill opined that plaintiff retained the capacity to perform

6

one- and two-step tasks on a sustained basis.  (*Id.*).  The Commissioner contends that the ALJ's RFC finding is consistent with Dr. Hill's opinion because it accounts for plaintiff's difficulty in interacting with others and her limitations in maintaining concentration for extended periods.

The Commissioner argues that the ALJ also properly considered plaintiff's daily activities in arriving at his RFC determination, including that she lived by herself, prepared meals, shopped and completed household chores such as laundry, dusting, vacuuming, doing dishes, changing the sheets, and ironing.  (Dkt. 6-2, Pg ID 45-46; Dkt. 6-6, Pg ID 165-66).  Plaintiff also cared for her dog, drove, handled her finances, and spent time visiting friends, going to the movies, and occasionally went to church.  (Dkt. 6-6, Pg ID 166-67; Dkt. 6-7, Pg ID 225).  Plaintiff admitted she enjoys reading and gardening, and that she can follow oral instructions and written instructions if she re-reads them, and can sometimes pay attention.  (Dkt. 6-6, Pg ID 167-68).  The Commissioner argues that these extensive and robust activities properly informed the ALJ's determination that, despite plaintiff's impairments, she retained the ability to perform some kind of substantial work activity.  20 C.F.R. § 404.1529(c)(3)(I); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("The ALJ could properly determine that [the claimant's] subjective complaints were not credible in light of her ability to perform other tasks.").

7

According to the Commissioner, the ALJ also properly found that plaintiff's treatment notes did not support her allegations of disabling symptoms. (Dkt. 6-2, Pg ID 44). In July and August 2008, plaintiff stated that she was doing fairly well (Dkt. 6-7, Pg ID 217-18), and an April 2009 medication review showed that plaintiff was doing "real well" with great improvement in her mood. (Dkt. 6-7, Pg ID 254). Although plaintiff was hospitalized for one week in late October-early November 2009 for paranoia and psychotic behaviors, doctors attributed her problems to amphetamine dependency, and plaintiff admitted taking a 30-day supply of Adderall in 10 days. (Dkt. 6-7, Pg ID 258-29). On discharge, plaintiff was free of suicidal ideation and psychosis and was able to handle news that her mother had passed away while she was hospitalized. (Dkt. 6-7, Pg ID 259). And, the ALJ noted that there was no evidence that plaintiff exhibited this degree of psychosis at any other time or that this particular severity of symptoms lasted, or was expected to last, for at least twelve months. (Dkt. 6-2, Pg ID 45).

The Commissioner argues that plaintiff does not challenge the ALJ's review of her treatment notes or his evaluation of the medical opinions of record, but rather, simply points out that doctors and clinicians assigned her GAF scores below 50 when she was admitted to the hospital in October 2009. The Commissioner contends that plaintiff fails to provide any further analysis or to further develop any argument based on these scores. In any event, the Commissioner contends that the

ALJ acknowledged plaintiff's GAF scores and explained:

> GAF scores of 40 to 59 were assessed. Doctors also
> assessed one outlying GAF score of 20; however, this
> score was determined at the beginning of an involuntary
> psychiatric hospitalization that occurred in 2009. Many
> of her mental health related symptoms at the time of the
> hospitalization were attributed to drug abuse.
> Additionally, the [ALJ] finds that a GAF (Global
> Assessment of Functioning) score is only a snapshot of
> the claimant's functioning on any given day and has
> dubious application for predicting one's ability to
> function in a competitive environment in the long run.

(Dkt. 6-2, Pg ID 44). The Commissioner argued that the ALJ's evaluation is
consistent with Sixth Circuit case law and the Social Security regulations, neither
of which require an ALJ to assess work-related limitations based on a claimant's
GAF scores. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 511 (6th
Cir. 2006) ("[W]e are not aware of any statutory, regulatory, or other authority
requiring the ALJ to put stock in a GAF score in the first place."); *Jordan v.
Comm'r of Soc. Sec.*, 2011 WL 891198, at *5 (E.D. Mich. Jan. 14, 2011) (GAF
scores are "subjective opinions, representing a snapshot of a person's level of
functioning at a given moment in time, not a rating of their ability to work."),
*adopted by*, 2011 WL 891240 (E.D. Mich. Mar. 11, 2011). According to the
Commissioner, the record reflects that the ALJ reasonably dismissed plaintiff's
lower GAF scores because they were related to an isolated period when plaintiff
was hospitalized for a drug problem.

Finally, the Commissioner argues that the ALJ reasonably relied on a hypothetical question that accurately portrayed plaintiff's substantial limitations. Specifically, at the administrative hearing, the ALJ asked the vocational expert whether a person with plaintiff's education, work experience and RFC could work, and the vocational expert testified that such a person could work as an assembler (50,000 jobs), packer (250,000 jobs), inspector (100,000 jobs), and farm laborer (300,000 jobs). (Dkt. 6-2, Pg ID 47). The ALJ also asked the vocational expert whether jobs would be available for an individual with plaintiff's vocational background who had marked limitations in maintaining concentration, relating adequately to supervisors and coworkers, tolerating stress, and responding adequately to routine changes in a work setting. (Dkt. 6-2, Pg ID 63). Based on these assumptions, the vocational expert testified that such a person could not work. (*Id.*). Plaintiff argues that the ALJ was obligated to rely on the vocational expert's testimony in response to this second question. The Commissioner argues in response that the ALJ need only rely on a hypothetical questions that accurately portrays a claimant's substantiated functional limitations, and here there is no evidence to substantiate the restrictions included in the ALJ's second hypothetical question. Notably, plaintiff has not cited any medical evidence or opinion demonstrating that she had such severe restrictions. Therefore, the Commissioner concludes, the ALJ reasonably relied on the vocational expert's testimony in

response to the first hypothetical question that accurately portrayed plaintiff's
substantiated limitations and properly found that plaintiff could perform a
significant number of jobs in the economy despite her impairments.  (Dkt. 6-2, Pg
ID 47).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system
in which the administrative agency handles claims, and the judiciary merely
reviews the agency determination for exceeding statutory authority or for being
arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The
administrative process itself is multifaceted in that a state agency makes an initial
determination that can be appealed first to the agency itself, then to an ALJ, and
finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is
not found during this administrative review process, the claimant may file an
action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final
administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this
statute is limited in that the court "must affirm the Commissioner's conclusions
absent a determination that the Commissioner has failed to apply the correct legal
standard or has made findings of fact unsupported by substantial evidence in the

record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.

McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant." *Rogers v.

Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.

Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may ... consider the credibility of a claimant

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the

claimant are to be given great weight, particularly since the ALJ is charged with

observing the claimant's demeanor and credibility.") (quotation marks omitted);

*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence."). "However, the ALJ is not free to make

credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul.

96-7p, 1996 WL 374186, *4.

2:12-cv-12635-BAF-MJH   Doc # 12   Filed 07/30/13   Pg 13 of 24   Pg ID 321

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*,

245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

## B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

14

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without further
> analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.
>
> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.
>
> Step Five: Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the

> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20

C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

### C.      Analysis and Conclusions

Plaintiff's brief in support of her motion for summary judgment is sparse and disorganized.  She articulates only one issue presented: "Whether the Commissioner erred as a matter of law by failing to properly evaluate the 'severe' impairment of depression.'"  (Dkt. 8, Pg ID 282).  Plaintiff fails, however, to develop this argument.  She broadly claims that "[t]he ALJ did not evaluate the degree of functional limitation in the four broad functional areas identified in 20 C.F.R. § 404.1520a(c)(3): activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation," but fails to offer any argument in support of that claim.  (*Id.*).  While the undersigned has thoroughly reviewed the record evidence, the parties' submissions, and the ALJ's decision, plaintiff cannot simply make the claim that the ALJ committed an error, while leaving it to the Court to scour the record to support this claim.  It is not sufficient for a party to mention a possible argument "in a most skeletal way, leaving the court to ... put flesh on its bones."  *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).  Indeed, a court need not make a party's case by scouring the various submissions to piece together appropriate arguments.  *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995).  And, the court is not obligated to make plaintiff's case for them or to "wade through and search the entire record" for

some specific facts that might support her motion. *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).

Nevertheless, the undersigned has reviewed the ALJ's decision and the record evidence and finds that the ALJ's decision is supported by substantial evidence. 20 C.F.R. § 404.1520a delineates, among other things, the "special technique" an ALJ is required to use when assessing whether a mental impairment is severe. A review of the ALJ's decision reveals that the ALJ performed the "special technique," and his finding that plaintiff does not have an impairment or combination of impairments that meet or equal one of the listed impairments is supported by substantial evidence. The ALJ carefully considered whether plaintiff had limitations in the four broad functional areas and found that plaintiff had mild restrictions in her activities of daily living; moderate difficulties in social functioning and with regard to concentration, persistence or pace; and no episodes of decompensation, which have been of extended duration. (Dkt. 6-2, Pg ID 41-42). The ALJ fully supported his findings with citations to the record evidence and concluded that because plaintiff's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied. (*Id.*). The ALJ's decision is further supported by the Psychiatric Review Technique Form ("PRTF") completed by Dr. Hill, who found plaintiff to have mild

restrictions of activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation.  (Dkt. 6-7, Pg ID 237).  Plaintiff fails to specify how the ALJ's decision is deficient or otherwise attempt to develop her argument.  Accordingly, the undersigned finds that the ALJ's finding that plaintiff's impairments do not meet or equal a Listing is supported by substantial evidence and plaintiff's claim of error should be denied.

Plaintiff also seems to argue that the ALJ impermissibly ignored certain GAF scores in reaching his RFC finding, claiming "[b]oth the admission and discharge GAF's were under the 50 score which shows a serious problem."  (Dkt. 8, Pg ID 282-83).  However, as before, plaintiff wholly fails to develop this argument any further.   Notably, plaintiff does not challenge the ALJ's review of her treatment notes or his evaluation of the medical opinions of record, and she fails to offer any further argument regarding this claimed "error" regarding the GAF scores.  In any event, plaintiff's argument is without merit because, as the Commissioner properly noted, the ALJ did acknowledge plaintiff's GAF scores and explained that plaintiff's low scores occurred during an isolated event when she was hospitalized for a substance abuse problem.   (Dkt. 6-2, Pg ID 44).  The ALJ further explained that a GAF score "is only a snapshot of the claimant's functioning on any given day and has dubious applicability for predicting one's

ability to function in a competitive environment in the long run." (*Id.*).  The ALJ's

analysis is consistent with Sixth Circuit case law and the Social Security

regulations.  It is well-recognized in the Sixth Circuit that GAF scores are a

subjective rather than objective assessment and, as such, are not entitled to any

particular weight.  *See Kornecky*, 167 Fed. Appx. at 511; *see also Kennedy v.*

*Astrue*, 247 Fed. Appx. 761, 766 (6th Cir. 2007) ("GAF is a clinician's subjective

rating of an individual's overall psychological functioning. A GAF score may help

an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a

mental health professional to turn medical signs and symptoms into a general

assessment, understandable by a lay person, of an individual's mental

functioning.").  The Sixth Circuit has stated that "we are not aware of any

statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF

score in the first place." *Kornecky*, 167 Fed. Appx. at 511.  The Commissioner

"has declined to endorse the [GAF] score for use in the Social Security and SSI

disability programs, and has indicated that [GAF] scores have no direct correlation

to the severity requirements of the mental disorders listings." *DeBoard v. Comm'r*

*of Soc. Sec.*, 211 Fed. Appx. 411, 415 (6th Cir. 2006) (internal quotations omitted).

 And, in fact, the Sixth Circuit has held that the ALJ's complete failure to discuss

the GAF scores assigned to plaintiff does not render his analysis unreliable.  *See*

*Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) (ALJ's failure

to refer to GAF score did not make his RFC analysis unreliable); *see also*

*Linebarger v. Comm'r of Soc. Sec.*, 2012 WL 3966297, at *7-8 (E.D. Mich. July

18, 2012) (ALJ's failure to mention to GAF scores was not legal error, and noting

further that the ALJ did explicitly discuss the reports that contained the scores).

Thus, the ALJ was not required to rely on plaintiff's GAF scores and he did not

commit error by discounting them.

Finally, plaintiff claims that the ALJ improperly relied on the vocational

expert's testimony in response to the first hypothetical question, which asked

whether a person with plaintiff's education, work experiences, and RFC could

work, and to which the vocational expert identified in response several jobs that

meet that criteria.  (Dkt. 6-2, Pg ID 61-62).  Plaintiff instead argues that the ALJ

should have relied on the vocational expert's testimony in response to a second

hypothetical question, which asked whether jobs would be available for an

individual with plaintiff's vocational background who had marked restrictions of

no useful vocational functioning, and in maintaining attention and concentration,

relating adequately to supervisors and co-workers, tolerating stress, and responding

adequately to routine changes in a work setting.  (Dkt. 6-2, Pg ID 63).  The

vocational expert testified that such an individual could not perform plaintiff's past

work or any other work.  (*Id.*).  Plaintiff argues, without further any elaboration or

development, that the first hypothetical question did not encompass all of

plaintiff's impairments. It is well-settled that in determining whether a claimant is disabled, an ALJ may rely on a vocational expert's response to a hypothetical question that accurately portrays a claimant's limitations and is consistent with the ALJ's express findings. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). Here, there is no evidence to substantiate the restrictions included in the second hypothetical question, and, notably, plaintiff has not cited any medical evidence demonstrating that she had such severe restrictions. Accordingly, the ALJ was not required to rely on the vocational expert's testimony in response to the second hypothetical question, but instead reasonable relied on the testimony in response to the first question that accurately portrayed plaintiff's substantiated limitations. The ALJ thoroughly reviewed and discussed plaintiff's testimony, her treatment records, and other medical records in determining her RFC, and the first hypothetical question mirrored that RFC. The ALJ complied with the controlling agency rulings and regulations in arriving at plaintiff's RFC and the accompanying hypothetical question posed to the vocational expert, and plaintiff has failed to prove that he has greater functional limitations than those provided in the first hypothetical question. Therefore, the ALJ was entitled to rely on the vocational expert's responsive testimony as substantial evidence supporting his finding that there are jobs that exist in significant numbers in the national economy that plaintiff can perform.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: July 30, 2013                              s/Michael Hluchaniuk
                                                 Michael Hluchaniuk
                                                 United States Magistrate Judge

## CERTIFICATE OF SERVICE

    I certify that on July 30, 2013, I electronically filed the foregoing paper with
the Clerk of the Court using the ECF system, which will send electronic
notification to the following: Richard J. Doud, Judith E. Levy, AUSA, Niranjan
Emani and the Commissioner of Social Security.

                                                 s/Tammy Hallwood
                                                 Case Manager
                                                 (810) 341-7887
                                                 tammy_hallwood@mied.uscourts.gov